UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

ELECTRONICALLY FILED

STURGEON EQUIPMENT SALES & RENTAL, INC., ASSIGNEE OF FIRST NATIONAL BANK & TRUST

CASE NO. _____

PLAINTIFF

**VERIFIED COMPLAINT, INCLUDING INJUNCTIVE RELIEF AND WRIT OF POSSESSION**

vs.

VIRGINIA DRILLING COMPANY (DELAWARE), LLC
DEFENDANT

For its Verified Complaint against the Defendant, Virginia Drilling Company (Delaware), LLC ("Virginia Drilling"), the Plaintiff, Sturgeon Equipment Sales & Rental, Inc., Assignee of First National Bank & Trust ("Sturgeon Equipment"), alleges and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Sturgeon Equipment, is a Kentucky corporation incorporated and existing under the laws of the Commonwealth of Kentucky, and maintains its principal place of business at 136 Main Street, Beattyville, Lee County, Kentucky 41311.

2. Defendant, Virginia Drilling, is a foreign corporation, incorporated and existing under the laws of the State of Delaware and its principal place of business is located at Route 83 Vansant, Virginia 24656. Its Registered Agent for service of process in the Commonwealth of

Kentucky is National Registered Agents, Inc., 400 West Market Street, Suite 1800, Louisville, Jefferson County, Kentucky 40202.

3. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391. The parties' citizenship is completely diverse; the amount in controversy in this matter exceeds, exclusive of costs and interest, the sum of $75,000.00; and the Defendant is subject to personal jurisdiction in this judicial district.

4. The Defendant is subject to the jurisdiction of this Court because, *inter alia*, the claims alleged herein arose out of it doing business in this State and in the commission of tortious acts within this State.

5. Venue lies in this Court because the causes of action alleged in the Complaint arose and accrued, in substantial part, in this District.

## BACKGROUND FACTS

6. On or about March 25, 2004, 2Energy, Inc. ("2Energy") executed and delivered to First National Bank & Trust ("FNBT") a Promissory Note (the "Note") in the original principal amount of $480,020.00, as renewed on or about July 20, 2004. A true and exact copy of the Note is attached hereto as Exhibit A and made a part hereof.

7. The Note was originally secured by certain collateral identified in the March 25, 2004 Commercial Security Agreement (the "Security Agreement") that 2Energy executed and delivered to FNBT in which it granted FNBT a security interest in certain specifically identified items of equipment, as more fully described therein, including, without limitation, an Ingersoll DM 45EXL drill s/n 3932  (the "Drill")  and all accessions, additions, replacements and substitutions and records and proceeds relating to any of the foregoing (collectively, the "Equipment"), all further identified and evidenced by that certain UCC Financing Statement No.

5096851 2 filed in the Delaware Secretary of State's Office and UCC Financing Statement No. 2004-1999662-68 filed in the Kentucky Secretary of State's Office (collectively, the "Security Instruments"). A true and exact copy of the Security Agreement and the Security Instruments are attached hereto, collectively, as Exhibit B and made a part hereof.

8. 2Energy defaulted on its Note and obligations owed to FNBT. In August 2005, FNBT filed suit against 2Energy and others in Laurel Circuit Court, Civil Action No. 05-CI-00820. The Complaint, among other claims, requested immediate possession of the Equipment, including the Drill. On or about August 1, 2005, FNBT also obtained a Temporary Restraining Order from the state court prohibiting 2 Energy from: (1) transferring any interest in the Equipment (including the Drill) by sale, lease, pledge or grant of security interest or otherwise disposing of or encumbering the Equipment; (2) concealing or otherwise removing the Equipment in such a manner as to make the Equipment less available to seizure by the levying officer; and (3) impairing the value of the Equipment either by acts of destruction or by failure to care for the products in a reasonable manner. A true and exact copy of the Temporary Restraining Order is attached hereto as Exhibit C and made a part hereof.

9. 2Energy and other defendants removed the state court complaint to the United States District Court for the Eastern District of Kentucky, London Division, Case No. 6:05-CV-421 (the "Prior Federal Action"). Thereafter, FNBT and 2Energy resolved the Prior Federal Action via a settlement that occurred in 2007 as reflected in an Agreed Judgment (the "Agreed Judgment"). In the settlement, 2Energy agreed that it had 180 days to liquidate the Equipment including the Drill, and pay the proceeds to FNBT, thereby reflecting that 2Energy represented to the federal court that it continued to own and have control of the Drill, with the proceeds of any

LEXLibrary 0123498.0591204 499976v1

such sale to be paid to FNBT.[1] If 2Energy was unsuccessful in its liquidation of the collateral Equipment, including the Drill, then FNBT was entitled to an Agreed Judgment entitling FNBT to possession of the collateral Equipment including the Drill. The Agreed Judgment further provided that the Court's Temporary Restraining Order "shall continue to apply except as modified by the Agreement and Agreed Judgment, and the Defendants shall continue to cooperate with FNBT and to preserve and protect the [Equipment]." A true and exact copy of the Agreed Judgment is attached hereto as <u>Exhibit D</u> and made a part hereof.

10. 2Energy did not liquidate the Equipment, including the Drill, and did not pay any proceeds to FNBT within the specified time allowed in the settlement. As a result, on May 20, 2008, FNBT filed the Agreed Judgment in the Prior Federal Action. Pursuant to the Agreed Judgment, the Court and Defendants granted FNBT the right to immediate possession of the Equipment, including the Drill and the proceeds of any subsequent liquidation of the Equipment did not have to be applied to reduce the Agreed Judgment amount. Pursuant to the prior Temporary Restraining Order and the Agreed Judgment, 2Energy was at all times precluded from transferring the Equipment, including the Drill.

11. After obtaining the Agreed Judgment in the Prior Federal Action, FNBT attempted to obtain possession of the Equipment, including the Drill and learned that the Drill was located at a site in Leslie County, Kentucky controlled by Infinity Energy, Inc. ("<u>Infinity</u>").

---

[1] The basis for FNBT's claims to the Equipment, including the Drill, in the Prior Federal Action was premised on its Security Instruments. Once the Agreed Judgment was entered, FNBT allowed the UCC-1s to lapse in 2009 based upon its existing Agreed Judgment authorizing possession of the Equipment. At all times, 2Energy knew of FNBT's rights to all proceeds of any sale of the Drill from the UCC-1, the Temporary Restraining Order and the claims and the Agreed Judgment in the Prior Federal Action. Based upon the terms of the Agreed Judgment in the Prior Federal Action, 2Energy represented to the federal court that 2Energy had possession and ownership of the Drill as part of the 2007 settlement, including as part of the Agreed Judgment as no proceeds from the sale of the Drill were ever remitted to FNBT.

FNBT was also informed that certain entities claimed repairman liens in some of the other Equipment. As a result, FNBT filed suit against 2Energy and then joined Infinity and others in the Floyd Circuit Court, Civil Action No. 08-CI-1044 (the "State Court Action"). In the State Court Action, Infinity claimed that it had purchased a drill but could not verify the serial number for the drill it supposedly owned and could not even confirm that the drill it supposedly previously purchased was the same Drill at issue herein. Infinity never produced to FNBT or in the State Court Action any bill of sale for any acquisition or purchase of the Drill.

12. On July 27, 2010, FNBT obtained an Order Granting Motion for Sale of Equipment (the "Order") whereby the Floyd Circuit Court in the State Court Action authorized FNBT to sell the Equipment, including the Drill, free and clear of all liens in compliance with Article 9 of the Uniform Commercial Code enacted by the Commonwealth of Kentucky. A true and exact copy of the Order is attached hereto as Exhibit E and made a part hereof. The liens, if any, of FNBT and certain defendants, would attach to the proceeds of the sale of the Equipment.

13. On October 27, 2011, FNBT assigned its interests in the Note, the Security Agreement, the Security Instruments, the Agreed Judgment, the Order and the State Court Action to Sturgeon Equipment by virtue of the Assignment (the "Assignment"). A true and exact copy of the Assignment is attached hereto as Exhibit F and made a part hereof.

14. Certain items of the Equipment were sold pursuant to the Order of the State Court Action, but the Drill has not been sold pursuant to the State Court Action due to its removal from the Commonwealth of Kentucky.

15. Sturgeon Equipment has recently learned that the Drill is now in the possession of Virginia Drilling. Virginia Drilling claims that it owns the Drill because it acquired the Drill ostensibly for the payment of debt owed by Infinity to Virginia Drilling. However, 2Energy did

LEXLibrary 0123498.0591204 499976v1

not have the legal right to sell or transfer the Drill to any third party at any time until 2007 and then only on certain conditions which did not occur. Infinity did not have lawful title to the Drill, as demonstrated by the absence of any bill of sale. Virginia Drilling has also never delivered any bill of sale for the Drill in spite of demands for the same as outlined below.

16. Beginning in October 2011, Sturgeon Equipment issued demands to Virginia Drilling to deliver the Drill to Sturgeon Equipment and further notified Virginia Drilling it was not a bona fide purchaser. A true and exact copy of the written Notices to Virginia Drilling from November 2011 to February 2012 are attached hereto as Exhibit G and made a part hereof. To date, Virginia Drilling has refused to deliver the Drill to Sturgeon Equipment and continues to use the Drill for its own business to generate revenues for its own benefit and against the business interest of Sturgeon Equipment. Virginia Drilling has never produced any bill of sale for the Drill in response to Sturgeon Equipment's demands for possession and delivery of the Drill.

## COUNT I
## (WRIT OF POSSESSION)

17. Plaintiff restates, re-alleges and reaffirms all allegations set forth in numerical paragraphs 1-16 above, the same as if set forth herein at length.

18. The Defendant, Virginia Drilling, acquired possession of the Drill from Infinity but Infinity did not own the Drill, did not hold title to the Drill and did not have any rights to the Drill. This Federal Court, in the Prior Federal Action, ordered the Drill to be delivered to FNBT, which right is now held by Sturgeon Equipment. This is an action by Sturgeon Equipment to recover possession of the Drill and Sturgeon Equipment is entitled to possession of the Drill

LEXLibrary 0123498.0591204 499976v1

based upon the Temporary Restraining Order and the Agreed Judgment from the Prior Federal Action.

19. The Drill is being improperly detained by Virginia Drilling even though Virginia Drilling did not legally acquire title or ownership of the Drill from Infinity or 2Energy.

20. The Drill is an Ingersoll DM43 drill valued at approximately $85,000 as a whole.

21. The location of the Drill is on a job site operated by Virginia Drilling, which based upon information and belief, is in West Virginia. The Drill was loaded by Virginia Drilling from a site in Leslie County Kentucky and believed to have been taken to West Virginia.

22. The property has not been taken for tax assessment or fine or any other circumstances outlined in KRS 425.011(e).

23. Demand has been made for return of the Drill pursuant to KRS 425.012, including notice of right to a hearing.

24. Sturgeon Equipment is entitled to possession of the Drill and demands judgment that Virginia Drilling be ordered to immediately surrender said Drill and disclose a place and time Plaintiff can recover said Drill, or that the Drill be delivered to Sturgeon Equipment, or that Sturgeon Equipment be authorized to take possession of the Drill, or that the U.S. Marshall be authorized to take possession of the Drill and deliver the same to Sturgeon Equipment.

## COUNT II
## (CONVERSION)

25. Plaintiff restates, re-alleges and reaffirms all allegations set forth in numerical paragraphs 1-24 above, the same as if set forth herein at length.

LEXLibrary 0123498.0591204 499976v1

26. The Defendant, Virginia Drilling, claims it acquired the Drill from Infinity but Infinity did not own the Drill as 2Energy could not and did not sell the Drill to Infinity and deliver any proceeds to FNBT.

27. Virginia Drilling wrongfully obtained and retains possession of the Drill, which is property subject to the rights of the Plaintiff. Virginia Drilling has failed and/or refused to turn over the Drill to Plaintiff notwithstanding Plaintiff's demands. Virginia Drilling has wrongfully exerted dominion over personal property in which Plaintiff holds legal rights in denial of or inconsistent with Sturgeon Equipment's rights therein, including a wrongful exercise or assumption of authority and possession over Sturgeon Equipment's Drill, depriving Sturgeon Equipment of possession, permanently or for an indefinite time. As a result of Virginia Drilling's actions, Sturgeon Equipment has sustained damages and incurred attorney fees, which pursuant to law or equity should be awarded to Sturgeon Equipment.

## COUNT III
### (INJUNCTIVE RELIEF)

28. Plaintiff restates, repeats and realleges the general allegations of Paragraphs 1 through 27 as though fully set forth herein.

29. Sturgeon Equipment has demanded, as demonstrated by delivery of letters and communications attached in Exhibit G, that Virginia Drilling return the Drill to Sturgeon Equipment but Virginia Drilling refused and continues to refuse to return the Drill.

30. The Plaintiff has the right to possession of and sale of the Drill and the Drill would have been sold in the State Court Action but for its wrongful removal from the state by Virginia Drilling. The Drill's economic value is being diminished by Virginia Drilling's continued use of the Drill for its own economic benefit. Further, Sturgeon Equipment may not

be able to obtain immediate possession of the Drill if discovery is required to identify the location of the Drill and obtain Orders and instructions to the U.S. Marshall to retrieve the Drill. Until Sturgeon Equipment obtains possession of the Drill, Sturgeon Equipment requests a temporary restraining order as set forth in KRS 425.071, followed by a preliminary and permanent injunction prohibiting and enjoining Virginia Drilling from:

(a) Transferring the Drill or any interest in the Drill to anyone except Sturgeon Equipment or otherwise disposing of or encumbering the Drill.

(b) Concealing or otherwise removing the Drill in such a manner as to make it less available to seizure by the U.S. Marshall for delivery to Sturgeon Equipment.

(c) Impairing the value of Drill either by any continued use of the Drill or by failure to care for the Drill in a reasonable manner.

(d) Using the Drill in any manner until further Order of this Court.

Sturgeon Equipment further requests injunctive relief that Virginia Drilling be ordered to immediately surrender said Drill and disclose a place and time Plaintiff can recover said Drill.

31. Without injunctive relief, Sturgeon Equipment will suffer irreparable harm as a result of the increasing diminished value of the Drill from its continued use and Sturgeon Equipment's loss of economic benefit from its own use of the Drill.

32. Sturgeon Equipment has no adequate remedy at law for this irreparable harm because it is difficult to quantify the losses Sturgeon Equipment has suffered and continues to suffer as a result of the wrongful conduct of Virginia Drilling.

33. Issuance of a temporary restraining order, preliminary and permanent injunction will protect the interest of Sturgeon Equipment by stopping the wrongful conduct of Virginia Drilling. It is likely that Sturgeon Equipment will prevail at trial and the issuance of a restraining

order and preliminary injunction will preserve the status quo and avoid further damage to Sturgeon Equipment and loss of damages during the pendency of this litigation.

34. The benefit to Sturgeon Equipment outweighs the harm to Virginia Drilling because the injunction merely compels compliance by Virginia Drilling with its legal obligations.

WHEREFORE, Plaintiff, Sturgeon Equipment, demands as follows:

1. That it be awarded immediate possession of the Drill; and

2. That it be awarded a personal JUDGMENT against the Defendant, Virginia Drilling, for any damages from Sturgeon Equipment's loss of use of the Drill, disgorgement of Virginia Drilling's revenues from its wrongful use of the Drill, court costs and expenses;

3. That it be awarded injunctive relief, including a temporary restraining order and preliminary and permanent injunction as set forth in Count III above.

4. Judgment for any other legal or equitable relief, including attorney fees, to which it may appear entitled.

FROST BROWN TODD LLC

*[signature]*

Denise H. McClelland, Esq.
Patricia K. Burgess, Esq.
250 West Main Street, Suite 2800
Lexington, Kentucky  40507
Tel: (859) 231-0000
Fax: (859) 231-0011
E-mail: dmcclelland@fbtlaw.com
E-mail: pburgess@fbtlaw.com
*Attorneys for Plaintiff*

LEXLibrary 0123498.0591204 499976v1

## **VERIFICATION**

I hereby state that the facts stated in the above Complaint are true and accurate to the best of my knowledge and belief.

_____
Everett W. Currier, Jr.